UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


UNITED STATES OF AMERICA *ex rel.*
ROBERT J. LAMBERT, *et al.*,

                    Plaintiff(s),

v.                                                        Case No.  1:05-CV-596

ROBERT STOKES, *et al.*,                                   HON. GORDON J. QUIST
                                                           United States District Judge

                    Defendant(s).
_____/

**UNITED STATES OF AMERICA'S**
**REPLY TO DEFENDANT'S RESPONSE TO**
**UNITED STATES' MOTION FOR PARTIAL SUMMARY JUDGMENT**

## I.  INTRODUCTION

Defendant[1] admits that collateral estoppel applies in this case and precludes Dr. Stokes and his professional corporation, Robert W. Stokes, D.O., P.C., from denying that he engaged in a scheme to defraud.  However, Defendant also argues for limiting the application of collateral estoppel to the 17 executions of the scheme upon which Defendant was convicted by the jury at the criminal trial.  As discussed more thoroughly below, Defendant's arguments fall short both factually and legally and should be rejected by the Court.

## II.  RELEVANT FACTS

Defendant admits that he engaged in a scheme to defraud (Defendant's Brief, pg. 2). Defendant argues that the collateral estoppel provision of the False Claims Act (FCA), 31 U.S.C. 3731(d), should be limited to <u>executions</u> of the scheme to defraud.  Evidence introduced at the criminal trial indicates that this fraud scheme was not limited to the 17 executions upon which the jury convicted Defendant, but rather was an ongoing scheme lasting for years.

For example, Defendant testified that he billed a full thickness excision (FTE) every time he performed a less medically intensive shave incision (Government's Brief in Support of Summary Judgment, Exhibit 9; trial testimony of Dr. Stokes, pgs. 202-204).  Similarly, the government's trial evidence graphically illustrated the extent of Defendant's billings for adjacent tissue transfers (ATTs) when a less complex closure was performed (Government's Brief in Support of Summary Judgment, Exhibit 11).  Notably, Defendant failed to introduce <u>any patient</u> who would testify that he or she actually had an ATT performed by Defendant.  Finally, in

---

[1]  Defendant is used in reference to Robert W. Stokes and Robert W. Stokes D.O., P.C., a Michigan corporation.  Defendants concede that the parties are so closely related as to be in privity for purposes of this motion.  (Defendants' Brief, p. 1).

proving fraud with regard to impetigo, the government elicited testimony that impetigo in surgical patients almost never occurs.  (Government's Brief, pg. 17).  The government also submitted graphic illustrations of Defendant's billings demonstrating that he billed for hundreds of cases of impetigo during the years at issue.  (Government's Brief in Support of Summary Judgment, Exhibit 14).   Again, Defendant failed to produce a single witness to support him by stating that he actually had suffered from impetigo and had been treated by Defendant.  The Court heard these facts during the criminal trial.  The United States requests that the Court rule that a civil trial requiring the reintroduction of the same facts proven during the criminal trial would be neither fair nor efficient.

### III.  LAW AND ARGUMENT

**A.    There Is No Legal Basis to Limit the Application of Collateral Estoppel to 17 Executions as Argued by Defendant**

 The collateral estoppel provision of the False Claims Act (FCA) is not limited to executions.  Rather, the provision estops the Defendant from denying "the essential elements of the offense in any action which involves the same transaction as in the criminal proceeding....". 31 U.S.C. 3731(d).

The essential elements of Defendant's conviction for health care fraud are delineated in the jury instruction defining the crime.  As discussed at length in the government's brief, the first element of that definition is that "the defendant knowingly devised a scheme or artifice to defraud a health care benefit program in connection with the delivery of or payment for health care benefits, items, or services by means of materially false or fraudulent pretenses or representations."  Instruction 2.02, Definition of Crime - Health Care Fraud.  (Emphasis supplied.)

2

The language of the instruction itself uses the word "element" three times.  Therefore, by definition, Defendant's scheme to defraud was an essential element of his conviction for health care fraud.  The issue precluded from repeat litigation in the instant case is the existence of this scheme to defraud.  Coupled with the facts described in the government's brief and revisited briefly *supra*, it is clear that the indictment, proofs at trial, and jury instructions upon which Defendant was convicted established the existence of a scheme that spanned many years and many more executions than the 17 counts of defrauding Medicare upon which he was convicted. Defendant's argument might be persuasive if the indictment, proofs, and jury instructions had been limited to the 17 executions.  As the Court surely recalls, the proofs presented at trial went far beyond the 17 executions identified in the jury's verdict.

If Defendant's arguments were accepted, the ensuing civil trial would be an exercise in duplication and futility.  The proofs would be as follows:

1.     Defendant would admit liability for a scheme to defraud Medicare proven at the criminal trial;

2.     The United States would offer statistical evidence, likely via the same statistician utilized at the sentencing/restitution hearing, to establish damages;

3.     The defense would offer an opposing expert, likely the same opposing expert utilized during the sentencing/restitution hearing, to oppose the United States' damages calculation;

4.     The jury would decide (as the Court already decided), utilizing a preponderance of the evidence standard (already utilized by the Court at sentencing) on a damage figure to award;

     5.      The Court would follow the False Claims Act and treble the damage figure calculated by the jury, as well as calculating applicable penalties.

As discussed more thoroughly below, this result would be both inefficient and unnecessarily duplicative of matters previously decided by the Court.  It is difficult to imagine a situation where the legal doctrine of collateral estoppel would be more applicable than in the instant case.

**B.**    **The Cases Cited by Defendant Are Not Applicable to These Facts**

Case law supports use of the courts' determinations regarding restitution to establish civil damages.  The Sixth Circuit Court of Appeals and multiple trial courts have supported the application of collateral estoppel to criminal convictions on the issue of liability in  subsequent civil proceedings predicated on the False Claims Act.  (See cases collected in government's brief in support of motion for partial summary judgment).  Importantly, Sixth Circuit cases have also upheld the preclusive effect of restitution to establish civil damages.  See United States v. Szilvagyi, 398 F.Supp.2d 842 at 847 (E.D. Mich. 2005).  Defendant's response brief ignores the cases cited by the United States, and attempts to cloud the issue by referring to case law that is not applicable.

The defendant cites the case Kosinski v. C.I.R., 541 F.3d 671 (6th Cir. 2008), as establishing a "rule" barring the use of criminal restitution to establish civil damages.  As discussed below, the Kosinski case explicitly refrains from establishing a rule or presumption, and is distinct both factually and legally from this case.

In Kosinski, two taxpayers challenged a decision by the Tax Court using a tax deficiency,

established by the District Court at sentencing, as a fraud penalty.  The taxpayers invoked the

doctrine of collateral estoppel, arguing that findings made by a Federal District court in imposing

a sentence on Timothy Kosinski in a criminal case precluded the Tax Court's findings.  The

Sixth Circuit Court of Appeals ruled that the District Court's findings lacked issue preclusive

effect.  Kosinski, *supra* at 674.

The Sixth Circuit utilized a four-part test in ruling that collateral estoppel was not

applicable as argued by the Kosinskis.  The test requires:

> (1) the precise issue raised in the present case must have been
> raised and actually litigated in the prior proceeding; (2)
> determination of the issue must have been necessary to the
> outcome of the prior proceeding; (3) the prior proceeding must
> have resulted in a final judgment on the merits; and (4) the party
> against whom estoppel is sought must have had a full and fair
> opportunity to litigate the issue in the prior proceeding.

Kosinski, *supra* at 675, citing United States v. Cinemark USA, Inc., 348 F.3d 569, 583 (6th Cir.

2003) (internal quotation marks omitted).

The court ruled that the Kosinskis failed to establish any of the four elements outlined

above.  *First*, the Kosinskis failed to identify the "precise issue" decided by the sentencing court

that purportedly estopped the government.  Specifically, the court stated that the Kosinskis

"never clarify what "other numbers" they are talking about."  Id. at 675.  The Sixth Circuit ruled

that the first factor was not met because "in the absence of a finding by the sentencing court on

the "precise issue" before the Tax Court, preclusion is a guessing game."  Id. at 676.

*Second*, the Kosinskis failed to show that the sentencing court's fact findings were

"necessary" to its judgment.  Specifically, the court referenced the broad tax loss bands of the

guidelines, which would have resulted in the same sentence so long as the tax loss fell anywhere

between $550,000 and $2.5 million.  Id. at 676.  Additionally, the Court cited the Booker case for the proposition that, "the "guidelines *could not* constitutionally cause his sentence to turn on the district court's tax loss finding."  The Court of Appeals clarified that the District Court "should recognize and exercise its discretion to consider - or not to consider - [Kosinski's] tax loss.... That discretion undermines the Kosinskis' contention that the district court's tax-loss finding was necessary to the final judgment."  Id. at 676.

*Third*, the district court's judgment in the criminal case was not final as it was serially vacated by the Sixth Circuit.  The court stated that collateral estoppel requires a final judgment.

*Fourth*, Kosinski's sentencing proceeding did not give the government a full and fair opportunity to litigate the tax-loss issue.  The Sixth Circuit quoted the Supreme Court which stated that collateral estoppel "might be unfair ... where the second action affords the [opposing party] procedural opportunities unavailable in the first action that could readily cause a different result." Or where the opposing party "ha[d] little incentive to defend vigorously" in the first action."  Kosinski at 677, citing Parklane Hosiery Co. v. Shore, 439 U.S. 322, 330-31, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979).

None of these deficiencies apply in the present case.  *First*, the precise issues in the civil case were raised and litigated at the criminal sentencing hearing.  At the criminal sentencing hearing, this Court applied the scheme of health care fraud found by the jury to a wider universe of claims billed during the relevant period.  Specifically, this Court found that Defendant had committed fraud with regard to three specific procedures:  billing shaved lesions as full thickness excisions; false claims of adjacent tissue transfer (ATT); and improper diagnosis of impetigo.  At sentencing, this Court heard statistical evidence from competing statisticians regarding the

application of these convictions to all of Defendant's billings.  Following this testimony, this Court determined, applying the preponderance of the evidence standard required by the Mandatory Victims Restitution Act (MVRA), the amount of restitution to be imposed in the final judgment.  In conclusion, this Court's determination of the restitution in this case was anything but a "guessing game."

*Second*, unlike the Kosinski case, a finding of restitution was mandatory in the Stokes criminal case pursuant to the MVRA.  Unlike the broad bands of tax loss cited by the Kosinski court, this Court was under the mandate of the MVRA, specifically 18 U.S.C. 3663(A)(a)(1), to order Stokes to make restitution to the victims.  The MVRA contemplates the restitution will be calculated accurately, rather than a "broad band" approach.

*Third*, this Court's restitution order was embodied in a final judgment.  That final judgment is the subject of a criminal appeal, but it is well established that the pendency of such an appeal does not adversely impact the application of collateral estoppel.  See Huron Holding Corp. v. Lincoln Mine Operating Company, 312 U.S. 183, 189 (1941).

*Fourth*, the sentencing proceeding conducted by this Court afforded both parties a full and fair opportunity to litigate the issue of damages.  The Court's own knowledge of the sentencing hearing in this matter undercuts defendant's arguments that the hearing was insufficient.  Unlike Kosinski, this Court did conduct a "full blown evidentiary hearing," and heard competing statisticians representing both the United States and the defendant.  Defendant's statistician was, in fact, deferential to the findings of the government's statistician.  (See Exhibit 1, Sentencing Transcript, pp. 53-59.)

Though the Federal Rules of Evidence were not applicable during this hearing, there is no evidence on the record that the defendant ever raised any challenge to the United States' statistician that would create a potential evidentiary dispute in a civil trial.  Defendant certainly knew that a civil action for damages would follow defendant's criminal trial.  Further, defendant fails to specify what additional civil discovery he requires regarding the statistical issues raised at sentencing.  Defendant has had access to all of the documents utilized during the sentencing, as well as the ability to take depositions, submit written interrogatories, etc.  Defendant has failed to utilize these mechanisms to establish a basis upon which to challenge this motion.

Also, distinct from Kosinski, the burden of persuasion is exactly the same in both cases.  At sentencing, the government bore the burden of proof, by a preponderance of the evidence, to establish the appropriate amount of restitution.  18 U.S.C. 3663(A).  The standard in this civil action is the same.

Finally, there is no evidence that either party lacked incentive to fully litigate the issue of restitution.  In fact, the content of that hearing with two competing expert witnesses and arguments by counsel for both the United States and the defendant, indicate that the opposite was true and both sides had incentive and did fully litigate the issue of the amount of restitution.

The Kosinski court concludes by stating (directly contrary to the "rule" suggested by defendant) that:

> To resolve this case we need not, and therefore do not, decide whether sentencing determinations categorically or even presumptively lack preclusive power.  We simply conclude, for the reasons given, that the Kosinskis' claim falls far short of the mark and therefore presents no ground for overturning the Tax Court's conclusion concerning the amount of their tax deficiency.

Kosinski, *supra* at 679.

This statement undercuts defendant's claim of a "rule" in the Sixth Circuit.  To the contrary, the cases cited by the United States state the opposite.  Restitution determinations <u>can be</u> used to establish civil damages in a subsequent proceeding pursuant to the doctrine of collateral estoppel.

> **C.      SEC v. Monarch Funding Corp., is Not the Rule in the Sixth
>         Circuit and its Requirements Would Not Be Violated Even
>         If the Court Decided to Follow its Holding**

The <u>SEC v. Monarch</u>, 192 F.3d 295 (2nd Cir. 1999),  case holds that, in the Second Circuit, applying the doctrine of collateral estoppel to sentencing findings "should be presumed improper."  <u>Monarch</u>, *supra* at 305-306.  This language contradicts <u>Kosinski</u>, *supra*, which holds that no such presumption exists in the Sixth Circuit.

Even under <u>SEC v. Monarch</u>, the United States' burden would be to demonstrate that it is fair and efficient to apply collateral estoppel in the circumstances of the particular case.  The defendant argues that the application of collateral estoppel in this case would be unfair because of the lack of trial by jury and the fact that the evidence at the sentencing hearing was not subject to the ordinary tests of admissibility which would apply in a trial setting.

As plaintiff points out in his own brief, the United States Supreme Court in <u>Parklane Hosiery Co. v. Shore</u>, 439 U.S. 322 (1979), held that the Seventh Amendment does not ban the application of collateral estoppel.  Defendant's argument that application of collateral estoppel would be unfair hinges upon the lack of procedural protections afforded defendant in the sentencing context.  These procedural protections include the right to discovery before trial and the right to challenge evidence introduced at trial utilizing the Federal Rules of Evidence.   As stated above, defendant has not requested any discovery regarding damages although this suit has

been pending for nearly one year. If the availability of pretrial discovery were critical to the defense, defendant could have already requested it, analyzed it, and made a presentation of the results of that discovery in Defendant's response brief. The same holds true with evidentiary challenges. Defendant cross-examined the government's statistician during the sentencing phase of the trial. A challenge as to the admissibility of the statistician's methodology would certainly have been available prior to or during the hearing. Finally, defendant poses no basis on which he would challenge the methodology of the United States' expert witness during the civil trial. The Court likely recalls that during the sentencing proceeding, the defendant's expert validated the statistical approach and data utilized by the United States.

  **D.  Defendant's Cases Fail to Address the Applicability of Common**
      **Law Collateral Estoppel**

    The United States' brief includes arguments for application of the FCA's collateral estoppel provision <u>and</u> common law collateral estoppel both to the government's FCA claims and the government's common law claims. Defendant fails to address any of the arguments made in favor of common law collateral estoppel. All of the discussion above is applicable in favor of the application of common law collateral estoppel because the requirements for invoking common law collateral estoppel are slightly broader than those contained in the FCA provision. Specifically, common law collateral estoppel requires that "<u>the issue</u> in the subsequent litigation is identical to that resolved in the earlier litigation...". While the FCA requires "essential elements," the term "issue" applies to an even broader class of proofs. Defendant does not argue that the FCA's provision supplants or replaces common law collateral estoppel. Even if the Court agrees with Defendant that the FCA's collateral estoppel provision is too narrow to apply, the Court should utilize common law collateral estoppel and should give preclusive effect to the

judgment in the criminal case with regard to both liability and damages.

### E.    The Requested Penalties Are Fair and Reasonable

Defendant challenges the government's request for the maximum penalty amount of $11,000 per false claim applied to the 17 counts of Dr. Stokes' convictions for executing his scheme to defraud Medicare.  As stated in the government's brief, and restated above *supra*, the 17 executions upon which Dr. Stokes was convicted are much less than the total universe of claims upon which penalties could potentially assessed.  The fact that the government is only requesting application of the penalty amount to 17 claims taken from a universe of over 8,000 claims argues for application of the maximum penalty amount.

### CONCLUSION

Defendant's response falls short both legally and practically.  Granting the United States' motion for summary judgment will provide a fair and efficient resolution of this matter.  In conclusion, the United States respectfully requests that this Court grant Plaintiff's motion for summary judgment with regard to both liability and damages in this matter.

Respectfully submitted,

DONALD A. DAVIS
United States Attorney

Dated:  March 27, 2009

*/s/ J. Joseph Rossi*
J. JOSEPH ROSSI
Assistant United States Attorney
Post Office Box 208
Grand Rapids,  MI   49501-0208
(616) 456-2404
Email: Joe.Rossi@usdoj.gov

11