UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

UNITED STATES OF AMERICA *ex rel.*
ROBERT J. LAMBERTS, MD,

       Plaintiffs,

v.                                                 Case No. 1:05-CV-596

ROBERT STOKES, DO, and                 HON. GORDON J. QUIST
ROBERT W. STOKES DO, P.C.,

       Defendants.
_____/

## OPINION

Relator, Robert J. Lamberts, filed his complaint in this case on September 2, 2005, alleging that Defendants, Robert Stokes and his professional corporation, Robert W. Stokes DO, P.C., violated the False Claims Act (FCA), 31 U.S.C. §§ 3729-3733 by submitting invoices to Medicare for services not performed. The Government filed its Notice of Election to Intervene in Part and to Decline to Intervene in Part and its First Amended Complaint in Intervention on February 28, 2008. The Government has now moved for partial summary judgment on all counts on its Complaint in Intervention, arguing that Defendants are estopped by Stokes' criminal conviction on multiple counts of health care fraud from denying liability under the FCA and on the common law claims of fraud and unjust enrichment.[1] For the reasons set forth below, the Court will grant the Government's motion in its entirety.

### I. BACKGROUND

Stokes was a licensed dermatologist who practiced medicine in the Grand Rapids, Michigan area. In the course of his practice, Stokes, through his professional corporation, provided various

---

[1]Although the Government has moved for summary judgment on all the claims in its Complaint in Intervention, it characterizes its motion as one for only partial summary judgment because it is not seeking summary judgment on all counts of Relator's complaint.

services, including general surgical procedures, to his patients. In connection with those services, Stokes submitted fraudulent claims to Medicare and various insurers for services that were not performed. The fraudulent claims arose from three schemes, classified as: (1) Adjacent Tissue Transfer (ATT), in which Stokes "upcoded" his claims by stating that he performed an ATT, when in fact he performed a less complex procedure; (2) Full Thickness Excisions (FTE), in which Stokes "upcoded" his claims by billing for full thickness excisions of malignant lesions when, in fact, he performed a shaved excision of lesions that were often benign; and (3) Impetigo fraud, in which Stokes billed Medicare for treatment of impetigo on follow-up visits in order to obtain additional compensation, when in fact the patients did not suffer from that condition.

On June 27, 2006, a grand jury returned a Superseding Indictment charging Stokes with 72 Counts of criminal health care fraud. The Government subsequently dismissed Counts 38-72 regarding laboratory services. On April 26, 2007, following a trial, a jury convicted Stokes on 31 of the 37 remaining Counts in the Superseding Indictment.

On December 27, 2007, this Court sentenced Stokes to one hundred twenty-six months on Counts 1 through 9, 11 through 18, and 26 through 37, to be served concurrently, and to six months on Counts 20 and 21, to be service concurrently to each other but consecutive to all other Counts. The Court also heard extensive testimony from the Government's and Stokes' statisticians regarding the application of the fraudulent scheme to the universe of claims Stokes submitted. This Court found the Government's expert witness more credible than Stokes' witness and concluded that the Government's sample of Blue Cross and Blue Shield of Michigan and Medicare claims from 2001 to 2003 provided an appropriate reasonable estimate of loss for the entire universe and could be extended to other years because the fraudulent scheme continued unchanged from the time of sampling through the last fraudulent claim. On February 5, 2008, the Court entered an Amended

Judgment, in accordance with its Memorandum Order Regarding Restitution, entered February 1, 2008, which determined the loss to Medicare from August 2001 until December 2004 to be $610,042, based upon the findings at the sentencing hearing.

## II. MOTION STANDARD

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Financial Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986)).

## III. DISCUSSION

### A. Estoppel and Issue Preclusion

The Government contends that it is entitled to summary judgment because § 3731(d) of the FCA precludes Stokes from denying the essential elements of its FCA claim under § 3729(a)(1) and (a)(2) based upon his conviction for health care fraud under 18 U.S.C. § 1347.[2] Section 3731(d) provides:

---

[2] Stokes filed a notice of appeal to the United States Court of Appeals for the Sixth Circuit on January 4, 2008. Although the appeal remains pending, Defendants do not assert that it is improper for the Court to proceed with this civil action while the conviction is on appeal. In an any event, the Court would reject such an argument for the reasons set forth in *United States v. Szilvagyi*, 398 F. Supp. 2d 842 (E.D. Mich. 2005).

3

> Notwithstanding any other provision of law, the Federal Rules of Criminal Procedure, or the Federal Rules of Evidence, a final judgment rendered in favor of the United States in any criminal proceeding charging fraud or false statements, whether upon a verdict after trial or upon a plea of guilty or nolo contendere, shall estop the defendant from denying the essential elements of the offense in any action which involves the same transaction as in the criminal proceeding and which is brought under subsection (a) or (b) of section 3730.

31 U.S.C. § 3731(d). This section codifies the common law application of collateral estoppel to criminal convictions in subsequent civil proceedings under the FCA. *United States v. Peters*, 927 F. Supp. 363, 367 (D. Neb. 1996).

The Government further contends that the criminal conviction has preclusive effect as to both the FCA claims and common law fraud and unjust enrichment claims under the common law doctrine of collateral estoppel, or issue preclusion. Issue preclusion requires four elements: (1) the issue precluded must be the same issue involved in the prior proceeding; (2) the issue must actually have been litigated in the prior proceeding; (3) determination of the issue must have been a critical and necessary part of the decision in the prior proceeding; and (4) the prior forum must have provided the party against whom estoppel is asserted a full and fair opportunity to litigate the issue. *Cent. Transp., Inc. v. Four Phase Sys., Inc.*, 936 F.2d 256, 259 (6th Cir. 1991).

The Government asserts that based upon the Court's restitution findings, it is entitled to treble damages under the FCA against Defendants in the amount of $2,481,624, based upon the $610,042 that the Court calculated for the years 2001 through 2004 for restitution in the criminal case plus the additional money that Medicare paid from 2005 to 2006 in the amount of $217,166 ($827,208 x 3). Several courts have held that a sentencing court's findings of actual loss for purposes of restitution may be used to establish the amount of damages in a subsequent civil action under the FCA. *United States v. Szilvagyi*, 398 F. Supp. 2d 842, 849-50 (E.D. Mich. 2005) (applying the total amount of loss determined under 18 U.S.C. § 3664 on health care fraud

4

conviction as the total amount of loss to Medicare for purposes of damages in FCA action); *United States v. Davis*, No. 05-393-EBA, 2008 WL 1735167, at *5 (E.D. Ky. Apr. 11, 2008) (same); *United States v. Convalescent Trans., Inc.*, No. 4:03-CV-32-FL, 2007 WL 2090210, at *6 (E.D.N.C. July 19, 2007) (same); *United States v. Bickel*, No. 02-3144, 2006 WL 1120439, at *3-4 (C.D. Ill. Feb. 22, 2006) (trebling actual damages portion of restitution amount from criminal proceeding); *United States v. Peters*, 927 S. Supp. 363, 368 (D. Neb. 1996).

Defendants concede that they are estopped to deny that Stokes engaged in a scheme to defraud, as the jury found by its verdict, but they contend that any estoppel under § 3731(d) should be limited to the 17 Medicare billings or "executions" of the scheme that were the subject matter of the Counts of conviction. Defendants argue that they cannot be estopped with regard to the more than 8,400 other executions that the Government established at the sentencing hearing because the additional executions that the Court found as part of its restitution order were not part of "the essential elements of the offense" under § 3731(d).

Contrary to Defendants' argument, however, at trial, the Court instructed the jury that to find Stokes guilty of health care fraud, it was required to find, as an element of the offense, that he devised a scheme to defraud a health care benefit program. While the jury was also instructed that the Government had to prove Stokes executed or attempted to execute the scheme or artifice, the evidence at trial was not limited to the 17 executions alleged in the Superseding Indictment. Instead, it established that Stokes' regular practice for many years was to bill for FTE when he performed shave incisions and to bill for ATT when he performed a less complex closure. The evidence also showed that Stokes billed for numerous cases of impetigo during the years at issue, even though impetigo rarely occurs in surgical patients. Because the evidence established an ongoing fraudulent scheme during the years in question, there is no basis to conclude that estoppel arising under 31

5

U.S.C. § 3731(d) or common law issue preclusion is limited to the 17 executions of which Stokes was convicted.

Defendants cite *Kosinski v. Commissioner*, 541 F.3d 671 (6th Cir. 2008), as binding precedent that a sentencing finding not comprising "an element of the crime of conviction" lacks preclusive effect in a subsequent civil proceeding. But, as noted above, the Court's restitution findings did concern an element of the crime and, contrary to Defendant's assertion, the *Kosinski* court declined to adopt a specific rule concerning the preclusive effect of sentencing findings, preferring instead to resolve the issue on the facts presented. The court stated:

> After reading all of this, one might question how a determination reached in a criminal-sentencing proceeding could *ever* satisfy this issue preclusion requirement [that the party against whom estoppel is asserted have had a full and fair opportunity to litigate the issue in the prior proceeding] – whether an individual or the government seeks to invoke the defense. And, to be sure, we know of no case (and the parties have cited none) where a federal court has ascribed preclusive effect to a sentencing court's findings of fact . . . . But to resolve this case we need not, and therefore do not, decide whether sentencing determinations categorically or even presumptively lack preclusive power. We simply conclude, for the reasons given, that the Kosinskis' claim falls far short of the mark and therefore presents no ground for overturning the Tax Court's conclusion concerning the amount of their tax deficiency.

*Id.* at 679.

More importantly, the circumstances here are markedly different than those in *Kosinski*. *Kosinski* involved a husband and wife who had been convicted of various tax-related offenses in a pre-*Booker*[3] case in federal court. The district court sentenced the husband in 2003 using a multi-year "tax loss" figure that split the difference between the government's and the husband's respective loss figures. The Sixth Circuit subsequently vacated the 2003 conviction in 2005 and, in 2007, vacated the sentence imposed on the 2005 remand for *Booker*-related reasons. In 2004,

---

[3]*United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005).

following the initial judgment, the government sent the Kosinskis a deficiency notice for 1997, and the Kosinskis filed a petition in the Tax Court for redetermination of the deficiency. After a trial, the Tax Court determined a $812,182 deficiency.

On appeal, the Kosinskis argued that issue preclusion barred the Tax Court from imposing the deficiency in light of the district court's findings of fact at the husband's sentencing hearing. The court held that the district court's sentencing findings satisfied none of the requirements for issue preclusion.

First, the court noted, the Kosinskis failed to identify the "precise issue" decided by the sentencing court that estopped the government. The court reasoned that if the Kosinskis were referring to the district court's determination of "tax loss," that finding could not preclude a redetermination because the district court made aggregate findings for several years, while the Tax Court case concerned only 1997. *Id.* at 675-76.

Second, the Kosinskis failed to show that the district court's findings were "necessary" to its judgment. Citing *Hickman v. Commissioner*, 183 F.3d 535, 538 (6th Cir. 1999), the court said that the conviction could not preclude the Tax Court from making findings on the issue because the amount of the underpayment was not an essential element of the crime of conviction, and the jury never had any reason to decide the issue. Moreover, the court observed, the district court's loss determination was based upon broad tax-loss bands that would have produced the same within-guidelines sentence so long as the loss fell between $550,000 and $2,500,000. Finally, the court pointed out that in light of *Booker*, "the guidelines *could not* constitutionally cause [the] sentence to turn on the district court's tax loss finding" because of the district court's discretion under *Booker* to consider or not consider the tax loss in imposing sentence. *Id.* at 676.

7

Third, the court pointed out that even if the criminal sentence hinged entirely on the tax loss, that finding would not have preclusive effect because, the Sixth Circuit having vacated the district court's judgments, no final judgment existed when the Tax Court issued its decision. The district court did not resentence the husband until months after the Tax Court rendered its decision. *Id.* at 676-77.

Finally, the court said that the sentencing hearing did not afford the government a full and fair opportunity to litigate the tax-loss issue. The court noted that the procedural ground rules in criminal and civil cases differ considerably for both prosecution and defense. For example, at sentencing, the Federal Rules of Evidence do not apply and there are few limits on the kind or source of information the court may consider. *Id.* at 677. In addition, the defendant and the government have limited opportunities for discovery in sentencing proceedings, whereas civil proceedings offer a full array of discovery procedures to both parties. The court also noted Fifth Amendment constraints on the government in a criminal proceeding that would not be present in a civil proceeding and, "[p]erhaps most importantly, the burden of persuasion differs in each setting," with the government bearing the burden in a sentencing proceeding and the taxpayer bearing the burden of persuasion in a civil tax case. *Id.* at 678. Finally, the court observed that the parties' incentives to litigate an issue may differ between a sentencing hearing and a later civil proceeding. For example, in the sentencing hearing the government had minimal incentive to litigate the actual tax loss because the district court's finding had little effect on the husband's base-offense level. *Id.* at 679.

In contrast to *Kosinski*, the four requirements for issue preclusion are firmly established in this case. *First*, at the sentencing hearing the parties litigated, and this Court decided, the precise issues raised in the instant case. This included the amount of loss to Medicare based upon Stokes'

8

scheme of health care fraud involving FTE and ATT claims and improper diagnosis of impetigo. The Court heard and considered the testimony of the parties' competing statisticians regarding the extent of the loss from the fraudulent scheme. *Second*, as Defendants concede, the Court's restitution findings were necessary to its judgment because the Mandatory Victims Restitution Act of 1996, 18 U.S.C. § 3663A(a)(1), required the Court to order Stokes to pay restitution to his victims. Moreover, restitution was required "in the full amount of each victim's losses as determined by the court and without consideration of [Stokes'] economic circumstances." 18 U.S.C. § 3664(f)(1)(A). *Third*, this Court's restitution order is embodied in a final judgment, which is still valid even though on appeal. *Humphreys v. BIC Corp.*, No. 90-5529, 1991 WL 4705, at *4 (6th Cir. Jan. 18, 1991) ("The established rule in the federal courts is that a final judgment retains all of its re judicata consequences, including its issue-preclusive effect, pending decision of the appeal.") (citing 18 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure: Jurisdiction § 4433 at 308 (1981)). *Fourth*, Stokes was afforded a full and fair opportunity to litigate the issue of restitution during the sentencing hearing. Stokes, like the Government, retained a statistician to present expert testimony on the extent and appropriate amount of restitution. Although the jury rendered its verdict on April 27, 2007, the sentencing hearing was not held until December 27, 2007, primarily to accommodate the parties' experts' preparation for the hearing. The sentencing hearing was lengthy, affording both the Government and Stokes the opportunity to present the testimony of their own experts, cross-examine the other party's expert, and present argument to the Court. While it is true that the Federal Rules of Evidence did not apply at the hearing, Defendants fail to show or argue they would have a meritorious basis for challenging the admissibility of the Government's expert or its evidence in a civil proceeding. Moreover, because restitution was at issue, both the Government and Stokes had significant incentives to litigate the issue.

Also, in contrast to *Kosinski*, the burden of proof was the same. On the issue of restitution, the Government had the burden of proving the proper amount of restitution by a preponderance of the evidence, 18 U.S.C. § 3664(f)(1)(A), which is precisely the same burden the Government bears in this case. Given these circumstances, both parties had significant incentive to litigate the amount of loss to Medicare.

Stokes also cites *SEC v. Monarch Funding Corp.*, 192 F.3d 295 (2d Cir. 1999), in which the Second Circuit held that it is presumptively improper to apply issue preclusion to sentencing findings. However, *Monarch Funding* is not the law of the Sixth Circuit. Moreover, even if issue preclusion on the basis of sentencing findings were presumed improper in the Sixth Circuit, the Court concludes that the presumption would be overcome in this case for the reasons cited above.

**B.     Statutory Penalty**

The Government also seeks penalties pursuant to 31 U.S.C. § 3729(a), in addition to treble damages. Pursuant to that section, the Court must impose a penalty ranging from a minimum of $5,500 to a maximum of $11,000 per violation. *United States ex rel. Longhi v. Lithium Power Techs., Inc.*, 530 F. Supp. 2d 888, 891 (S.D. Tex. 2008). A district court has "considerable discretion" in determining the amount of a penalty. *Miller v. Holzmann*, 563 F. Supp. 2d 54, 146 (D.D.C. 2008) (citing *Cook County v. Unites States ex rel. Chandler*, 538 U.S. 119, 132, 123 S. Ct. 1239, 1247 (2003)).

The Government request the maximum penalty for each of the executions set forth in the Counts of conviction, for total penalties of $187,000. It notes that based upon the evidence at the sentencing hearing, the total number of false claims Stokes presented was established at 8,481. However, it asserts that a penalty based upon this number of executions would be excessive. Thus, it argues for the maximum penalty on each of the 17 executions as a reasonable penalty in light of

the large number of executions. Stokes responds that the Government has not offered any reason why the maximum penalty should be applied, but this is not true. As noted, the 17 executions for which the Government seeks the maximum penalty are but a tiny fraction of the total fraudulent claims Stokes submitted to Medicare. The resulting number based upon the maximum penalty for the 17 executions is appropriate and reasonable in light of the large number of false claims.

## IV. Conclusion

For the foregoing reasons, the Court will grant the Government's motion for partial summary judgment against Defendants and award the Government treble damages in the amount of $2,481,624 and statutory penalties in the amount of $187,000, for a total award of $2,668,624.

An Order consistent with this Opinion will be entered.


Dated: July 15, 2009                                     /s/ Gordon J. Quist
                                                     GORDON J. QUIST
                                              UNITED STATES DISTRICT JUDGE